## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

### Northern Division

| | |
|---|---|
| DANA CRISWELL,<br><br>*Plaintiff*,<br><br>vs.<br><br>CHOKWE ANTAR LUMUMBA, in his official capacity of Mayor of Jackson, Mississippi, and CITY OF JACKSON, MISSISSIPPI,<br><br>*Defendants*. | Civil Action No.:  3:20-cv-294-DPJ-FKB |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This is a constitutional challenge to Mayor Chokwe Antar Lumumba's and the City of Jackson's overreaching attempts to "suspend" the constitutional right to carry a firearm openly in public for self-defense – a right that is protected by the Second Amendment to the United States Constitution, Article 3, Section 12 of the Mississippi Constitution, and Mississippi statutory law.

2. Defendants have exploited the present public health crisis caused by the exponential spread of COVID-19, the respiratory disease caused by the novel coronavirus SARS-CoV-2, as a pretext to target persons exercising their constitutional right to carry a firearm openly in public for self-defense.

### PARTIES

3. Plaintiff Dana Criswell ("Rep. Criswell") is an adult resident of Olive Branch, Mississippi.

4. Defendant Chokwe Antar Lumumba is and was at all times relevant hereto the duly-elected Mayor of Jackson, Mississippi, and as such was responsible for the promulgation and implementation of the policies, procedures, and practices of the City of Jackson, Mississippi. He is being sued in his official capacity only.

5. Defendant City of Jackson, Mississippi, ("Jackson" or "City") is a municipal corporation and political subdivision organized under the laws of the State of Mississippi, and as such, was and is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees.

## JURSIDICTION AND VENUE

6. Plaintiff brings this civil rights lawsuit pursuant to the Second Amendment to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

7. Plaintiff seeks declaratory and injunctive relief against the enforcement of a local order entitled "Mayoral Executive Order Suspending Open Carry of Firearms in the City of Jackson, Mississippi" ("Executive Order").

8. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9. This Court has supplemental jurisdiction over claims arising under the Mississippi Constitution pursuant to 28 U.S.C. § 1367(a).

10. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS

### The Exercise of Plaintiff Dana Criswell's Constitutional Rights

11. Plaintiff Dana Criswell is a gun owner, a Federal Firearms Licensed Dealer, and a duly elected state Representative to the Mississippi House of Representatives. For self-defense,

he carries a firearm with him every time he is in public, and sometimes carries his firearm openly in a holster.

12. As a member of the Legislature, Rep. Criswell travels to Jackson, Mississippi often.

13. In the past, Rep. Criswell has openly carried a firearm in a holster while in public in Jackson, Mississippi, for self-defense.

14. Rep. Criswell intends to continue openly carrying a firearm in a holster while in public in Jackson, Mississippi, for self-defense.

15. Rep. Criswell intends to be in Jackson, Mississippi, on or before April 30, 2020, and wishes to exercise his constitutional right to openly carry a firearm in public in Jackson, Mississippi, for self-defense.

16. On April 25, 2020, Rep. Criswell saw an online video in which Mayor Lumumba announced that he was "suspending" the right to openly carry a firearm in Jackson, Mississippi, at least until April 30, 2020

**The Unconstitutional Executive Order**

17. On April 25, 2020, an online video was posted to a YouTube.com channel belonging to the City of Jackson. The title of the video was "Mayor Lumumba's Open Carry Order During the COVID-19 Pandemic." In the video, Mayor Lumumba announced that he was issuing an executive order to "suspend" the right to openly carry a firearm in Jackson, Mississippi, due to the COVID-19 pandemic.

18. The video was later removed, seemingly because Mayor Lumumba incorrectly cited an irrelevant statute when claiming he had authority to issue the Executive Order. However, upon information and belief, the original video can be viewed online at: https://youtu.be/O85UPFUsQNg (last visited April 27, 2020).

19. Later on the same day, April 25, 2020, a revised online video was posted to a YouTube.com channel belonging to the City of Jackson. In the video, Mayor Lumumba again announced that he was issuing an executive order to "suspend" the right to openly carry a firearm in Jackson, Mississippi, due to the COVID-19 pandemic. That video is available at https://youtu.be/GCALhM4bLkI (last visited April 27, 2020).

20. On April 25, 2020, a petition was posted on the website www.change.org by an account named "Mayor Chokwe Antar Lumumba" which included the video of the Mayor's announcement, the text of his announcement, and a request for members of the public to sign a petition in order to "Join Jackson Mayor Chokwe Antar Lumumba in the fight to repeal the Open Carry Law in Mississippi!" The petition is available at: https://www.change.org/p/mississippi-state-senate-repeal-open-carry-in-mississippi?utm_content=cl_sharecopy_21760251_en-US%3Av10&recruiter=1081096764&recruited_by_id=5862eff0-86ab-11ea-9e2d-61fb29499f0c&utm_source=share_petition&utm_medium=copylink&utm_campaign=psf_combo_share_initial&utm_term=psf_combo_share_initial (last visited April 27, 2020).

21. A copy of an unsigned, undated, executive order has also been circulated by state and local media outlets reporting it to be the Executive Order announced by Mayor Lumumba. A copy of the unsigned Executive Order is attached hereto as Exhibit "1".

22. Upon information and belief, Mayor Lumumba has signed the Executive Order and it is now in effect.

23. The Executive Order states in part: "IT IS ORDERED that there shall be an immediate suspension of the following activity in the City of Jackson: the carrying of an unconcealed loaded or unloaded pistol or revolver or any other firearm, carried upon the person in a sheath, belt holster or shoulder holster or in a purse, handbag, satchel, other similar bag or

briefcase or fully enclosed case, with such pistol, revolver, or firearm being wholly or partially visible." *Id*.

24. The Executive Order invades fundamental rights while having no real or substantial relationship to the COVID-19 pandemic.

25. The Executive Order does not claim that openly carrying firearms causes an increased risk of coronavirus infection, either to the firearm carrier or to anyone else.

26. Rather, the Executive Order claims that the novel coronavirus spreads "illness and fear," which in turn makes citizens "prone to amassing guns and ammunition," and that such acquisition of guns is "usually accompanied by increased likelihood of unintentional shootings, intimate partner violence, and gun suicide," and that shootings have happened in Jackson during the coronavirus pandemic. *See* Exhibit 1.

27. The Executive Order states that there have been "nearly a dozen shootings" in the City of Jackson since the issuance of "Stay-at-Home" and "Shelter-in-Place" orders, but does not claim that any of those shootings have been committed by persons exercising their right to openly carry firearms in public places in Jackson, Mississippi, or that those shootings would not have occurred if there were no right to openly carry firearms in public places in Jackson, Mississippi. *Id*.

28. In the online videos announcing the Executive Order, Mayor Lumumba also discussed his views on the public policy rationales for eliminating the right to openly carry firearms, all of which bore no relationship to the ongoing COVID-19 pandemic.

29. In the online videos announcing the Executive Order, Mayor Lumumba also called on state leaders to permanently repeal Mississippi statutes which exempt the open carry of firearms from criminal offenses related to the concealment of deadly weapons.

30.     April 26, 2020, Mississippi Attorney General Lynn Fitch sent a letter to Mayor Lumumba, advising him that the City of Jackson "lacks statutory authority to suspend a state statute or constitutional provision" and requested that Mayor Lumumba to rescind his Executive Order immediately.  A copy of the letter is attached hereto as Exhibit "2".

31.     Upon information and belief, Mayor Lumumba has not rescinded the Executive Order.

32.     On April 27, 2020, Mayor Lumumba held a press conference in which he spoke briefly about his decision to issue the Executive Order.  An online video of the press conference can be viewed at: https://youtu.be/DX-Ux9pYg_k (last visited April 27, 2020).

33.     During the press conference, Mayor Lumumba discussed his "motivations" for issuing the Executive Order.

34.     None of the motivations discussed by Mayor Lumumba involved any public health risks related to the COVID-19 pandemic, or any past events occurring during the pandemic which could have been prevented by his Executive Order.

35.     In fact, during the press conference, Mayor Lumumba seemingly acknowledged that his Executive Order was unconstitutional and unlawful, saying: "I'd rather be wrong for the right reasons, than be right for the wrong reasons."

36.     The Executive Order purports to be in effect through Thursday, April 30, 2020.  *Id*.

37.     However, the expiration of the Executive Order falls on the same day as the expiration of a civil emergency proclamation also issued by Mayor Lumumba.

38.     At this time, it is unclear whether Mayor Lumumba will extend his civil emergency proclamation beyond April, 30, 2020, and if so, whether he will likewise extend the Executive Order "suspending" the right to openly carry firearms beyond April 30, 2020.

39.     Mayor Lumumba's Executive Order is in contravention of the Federal Constitution, the Mississippi Constitution, and Mississippi law.

## INJURY TO PLAINTIFF

40.     Defendants, through the Executive Order, have implicitly ordered Rep. Criswell, and others similarly situated, to cease exercising their constitutional right to openly carry a firearm in Jackson, Mississippi, and have implicitly threatened criminal punishment if he and others continue to exercise that constitutional right.

41.     Defendants issued this Executive Order and made this threat based solely on the fact that Plaintiff and others similarly situated openly carry firearms, and not based on any evidence that the open carrying of firearms increases any public health risks related to the COVID-19 pandemic.

42.     Based on the threat of future criminal action against him by Defendants, Plaintiff has been forced to cease openly carrying a firearm in Jackson, Mississippi, until after April 30, 2020, and potentially longer.

43.     But for the Executive Order, Rep. Criswell would exercise his constitutional right to openly carry a firearm in public in Jackson, Mississippi, for self-defense, on or before April 30, 2020.

## CAUSES OF ACTION

### Count 1:  Right to Bear Arms

44.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs.

45.     The Second Amendment to the United States Constitution protects the right to carry a firearm openly in public for self-defense.

46. Article 3, Section 12 of the Mississippi Constitution likewise protects the right to carry a firearm openly in public for self-defense.

47. Laws which burden conduct protected by the Second Amendment to the United States Constitution and Article 3, Section 12 of the Mississippi Constitution are subject to heightened scrutiny.

48. Prohibiting the carrying of firearms openly in public imposes substantial burden on the very core of the right secured by the Second Amendment and Article 3, Section 12: the lawful purpose of self-defense.

49. The Executive Order amounts to a destruction of the core Second Amendment and Article 3, Section 12 right carry a firearm openly for self-defense, and is thus unconstitutional under any level of scrutiny.

50. The Executive Order is not appropriately tailored to serve a sufficiently important governmental interest, and burdens substantially more protected conduct than is necessary to further any such interest.

51. Individual rights secured by the U.S. Constitution and the Mississippi Constitution do not disappear during a public health crisis.

52. While the Executive Order purports to have been enacted in response to the COVID-19 pandemic, it has no real or substantial relation to the COVID-19 pandemic, and is beyond all question a plain, palpable invasion of rights secured by the fundamental law.

53. While Executive Order purports to exercise civil emergency powers, in reality, the Defendants have exploited the present crisis as a pretext to target persons exercising their constitutional right to carry a firearm openly in public for self-defense.

54. The Executive Order exercises purported statutory power in an arbitrary, unreasonable manner, and through arbitrary and oppressive prohibitions.

55. Plaintiff has no other remedy by which to prevent or minimize the continuing irreparable harm to his constitutional rights.

56. Unless the Executive Order is declared unconstitutional and permanently enjoined, Plaintiff will continue to suffer great and irreparable harm.

### Count 2:  Illegal Ultra Vires Action

57. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs.

58. Under Mississippi law, the governing authorities of every municipality have the authority to promulgate and enforce orders, resolutions, and ordinances which are specifically authorized by provisions of general law, or which relate to municipal affairs, property, or finances, so long as such orders, resolutions, or ordinances are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi.  Miss. Code. § 21-17-5.

59. The Executive Order cites Mississippi Code Section 45-17-7(e) as its purported authority to suspend the right to carry a firearm openly in public for self-defense.

60. Section 45-17-7(e) authorizes a mayor, who has proclaimed the existence of a "civil emergency" under the provisions of Section 45-17-3, to, "in the interest of public safety and welfare . . . [i]ssue such other orders as are necessary for the protection of life and property."  Miss. Code. § 45-17-7(e)

61. A separate paragraph of the same statute, Section 45-17-7(d) authorizes mayor, during a civil emergency, to "[O]rder the discontinuance of selling, distributing, dispensing or

giving away of any firearms or ammunition of any character whatsoever." Miss. Code. § 45-17-7(d). This provision does not authorize a mayor to suspend the right to carry a firearm openly in public for self-defense.

62. Nothing in Section 45-17-7 authorizes a mayor to suspend any provision of statutory law or the constitutional right to carry a firearm openly in public for self-defense.

63. No other provision of general law authorizes a mayor to suspend any provision of statutory law or the constitutional right to carry a firearm openly in public for self-defense.

64. In fact, Section 45-9-51(1) expressly prohibits municipal governing authorities from suspending the constitutional right to carry a firearm openly in public for self-defense, providing that "no county or municipality may adopt any ordinance that restricts the possession, carrying, transportation, sale, transfer or ownership of firearms or ammunition or their components." Miss. Code § 45-9-51(1).

65. Rather, in the event of a natural disaster, the Mississippi Legislature, under Mississippi Code Section 33-15-11(c)(1), has expressly delegated to the Governor the power to "[t]o suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule or regulation would in any way prevent, hinder or delay necessary action in coping with a disaster or emergency." Miss. Code. § 33-15-11(c)(1).

66. In his March 14, 2020, state of emergency proclamation ("Proclamation") (attached hereto as Exhibit "3"), Governor Reeves stated: "Pursuant to Miss. Code Ann. § 33-15-11(c)(1) the provisions of state statutes, rules, regulations or orders may be temporarily suspended or modified if compliance with such provisions would prevent, hinder, or delay action necessary to cope with this outbreak." *See* Exhibit 3.

67. Nothing in the Governor's Proclamation authorizes a mayor to suspend any provision of statutory law or the constitutional right to carry a firearm openly in public for self-defense.

68. Other state statutes likewise ensure that the constitutional right to carry a firearm openly in public for self-defense is protected. For example, Section 97-37-1, the statute criminalizing the concealment of a deadly weapon, clarifies that "[f]or the purposes of this section, 'concealed' means hidden or obscured from common observation and shall not include [various weapons], including, but not limited to, a loaded or unloaded pistol carried upon the person in a sheath, belt holster or shoulder holster that is wholly or partially visible, or carried upon the person in a scabbard or case for carrying the weapon that is wholly or partially visible." Miss. Code. § 97-37-1(4).

69. Similarly, Section 45-9-101, the statute authorizing the issuance of licenses to carry concealed weapons clarifies that "[a] license under this section is not required for a loaded or unloaded pistol or revolver to be carried upon the person in a sheath, belt holster or shoulder holster or in a purse, handbag, satchel, other similar bag or briefcase or fully enclosed case if the person is not engaged in criminal activity other than a misdemeanor traffic offense, is not otherwise prohibited from possessing a pistol or revolver under state or federal law, and is not in a [various sensitive locations described in the statute]." Miss. Code. § 45-9-101(24).

70. Orders issued by a mayor that are inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi, are void. Miss. Code. § 21-17-5.

71. Defendants' attempts to enforce the Executive Order exceed their authority under Miss. Code. § 21-17-5 and other provisions of general law and are therefore void.

72. Plaintiff has no other remedy by which to prevent or minimize the continuing irreparable harm to his constitutional rights.

73. Unless enjoined or otherwise prohibited by this Court, Plaintiff will continue to suffer great and irreparable harm by Defendants' enforcement of the Executive Order.

## REQUEST FOR RELEIF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. An entry of judgment declaring that Defendants' enforcement of the Executive Order is unconstitutional both on its face and as applied.

B. An entry of judgement declaring that the Defendants' enforcement of the Executive Order is ultra vires, void, and of no effect because it exceeds the Defendants' statutory authority.

C. An *ex parte* temporary restraining order or preliminary injunction prohibiting Defendants and their agents from unconstitutionally enforcing the Executive Order against Plaintiff and others similarly situated for the duration of this litigation;

D. A permanent injunction prohibiting Defendants and their agents from unconstitutionally enforcing the Executive Order against Plaintiff and others similarly situated;

E. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

F. Any other relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED, this the 27th day of April, 2020.

 /s/ *Aaron R. Rice*
Aaron R. Rice
MS Bar No. 103892
MISSISSIPPI JUSTICE INSTITUTE
520 George St.
Jackson, Mississippi 39202
Tel: (601) 969-1300
Email: aaron.rice@msjustice.org

D. Sterling Kidd
MS Bar No. 103670
BAKER, DONELSON, BEARMAN,
CALDWELL, & BERKOWITZ, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Tel: (601) 351-8932
Fax: (601) 974-8932
Email: skidd@bakerdonelson.com

*Attorneys for Plaintiffs*