IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DANA CRISWELL**                                                                                           **PLAINTIFF**

**VS.**                                                                          Civil Action No.: 3:20-cv-294-DPJ-FKB

**CHOKWE ANTAR LUMUMBA**, in his
Official capacity as Mayor of Jackson,
Mississippi, and **CITY OF JACKSON,
MISSISSIPPI**                                                                                             **DEFENDANTS**

## AMICUS CURIAE BRIEF OF LYNN FITCH,
## ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI

*Amicus Curiae*, Lynn Fitch, the Attorney General of the State of Mississippi, files this *Amicus Curiae* Brief, in support of Plaintiff Dana Criswell:

### STATEMENT OF INTEREST

Attorney General Lynn Fitch is "the chief legal officer and advisor for the state, both civil and criminal."  Miss. Code Ann. § 7-5-1. Accordingly, she "has many constitutional, statutory, and common law duties, but 'paramount to all of [her] duties, of course, is [her] duty to protect the interests of the general public.'" *State v. Culp*, 823 So. 2d 510, 514–15 (Miss. 2002) (quoting *State ex rel. Allain v. Miss. Pub. Serv. Comm'n,* 418 So. 2d 779, 782 (Miss. 1982); *see also Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (Miss. 1973) (noting the Attorney General is charged with the "protection of public rights.").  The Attorney General has a unique, direct interest in this case because of its impact on the constitutional rights of Mississippi citizens. The individual right to keep and bear arms is protected by the United States and

1

Mississippi Constitutions. Given this fundamental right, the Attorney General has a substantial interest in ensuring these constitutional protections are afforded their proper application.

Plaintiff Dana Criswell's Complaint alleges, in part, that the executive order executed by Defendant Mayor Chokwe Antar Lumumba violates Mr. Criswell's rights under the United States and Mississippi Constitutions and violates Mississippi statutory law. *See* Dkt. 1. The Attorney General's duty to protect the interests and rights of the public, at its foundation, vests within her an interest in safeguarding Mississippi citizens from overreaching governmental action that erodes fundamental rights. Consistent with that duty and interest, the Attorney General submits this brief in support of Mr. Criswell's claims on the merits for the Court's consideration.

## INTRODUCTION AND BACKGROUND

Defendant Chokwe Antar Lumumba ("Mayor"), in his capacity as Mayor of the City of Jackson, Mississippi ("City"), issued a "Mayoral Executive Order Suspending Open Carry of Firearms in the City of Jackson, Mississippi" ("Order") that purports to "suspend" the right to openly carry a firearm within the City of Jackson's corporate limits. *See* Dkt. 1-1. Enacted under the Mayor's purported powers vested pursuant to the "civil emergency" that he declared in response to the COVID-19 pandemic, the Order forbids the following conduct:

> the carrying of an unconcealed loaded or unloaded pistol or revolver or any other firearm, carried upon the person or in a sheath, belt holster or shoulder holster or in a purse, handbag, satchel, other similar bag or briefcase or fully enclosed case, with such pistol, revolver, or firearm being wholly or partially visible.

The Order erodes Mississippians' fundamental right to keep and bear a firearm for self-defense, afforded by the Second Amendment to the United States Constitution and Article 3, Section 12 of the Mississippi Constitution. In addition, it violates Mississippi statutory law and the Legislature's intent that neither municipalities nor counties may regulate "the possession, carrying, transportation, sale, transfer or ownership of firearms or ammunition or their components." Miss. Code Ann. § 45-9-51(1). The Order also is unlawful because it seeks to suspend state statutes enacted by the Legislature, and the City enjoys no such right, whether during a civil emergency or otherwise. Finally, Defendants cannot exploit the global health crisis presented by COVID-19 to strip away fundamental rights, especially when doing so as pretext to achieve a long-standing policy goal—repealing the right to open carry.

For these reasons, the Order is invalid.

## ARGUMENT

I. **The Order Violates the Second Amendment to the United States Constitution, Article 3, Section 12 of the Mississippi Constitution, and Mississippi Statutory Law because it Impedes the Individual, Fundamental Right to Openly Carry a Firearm.**

Defendants' Order contains no subtleties. It is not a sheep in wolves' clothing. To the contrary, a plain reading of the two-page Order reveals its effect: it is a wholesale ban on openly carrying a firearm. The Order prohibits everyone, Mr. Criswell included, from openly carrying, *in any manner*, a firearm, *of any kind*, *at any location* within the City. It is difficult to imagine a more blatant disregard for constitutional freedoms and the right to possess a firearm, guaranteed by the United States and Mississippi Constitutions.

3

### A. The Order Violates the United States Constitution.

The Second Amendment to the United States Constitution acknowledges the natural[1] right of Americans to possess a firearm: "*A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.*" U.S. CONST. AMEND. II (emphasis added).

The United States Supreme Court has had several occasions to analyze the intent and effect of these twenty-seven words. Critical to such holdings are the Court's declarations that the right to keep and bear arms for self-defense is a right belonging to each *individual*. *D.C. v. Heller*, 554 U.S. 570, 595 (2008) (analyzing firearms restriction imposed by District of Columbia and holding that "[t]here seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms"); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010) (applying the Court's holding in *Heller* to the states). In *Heller*, the Court held that individual self-defense is "the *central component*" of the Second Amendment right. 554 U.S. at 599 (emphasis in original). In other words, Mr. Criswell enjoys a personal right to keep and bear firearms in furtherance of his self-defense.

Even if the Mayor had authority to issue the Order under Mississippi's municipal "civil emergency" law, which he did not,[2] the Order's ban on the open carry

---

[1] *See D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right." (emphasis in original)).

[2] The Order cites Mississippi Code Annotated Section 45-17-7(e)—relating to a mayor's authority during a duly proclaimed "civil emergency"—as the Mayor's purported

4

of a firearm violates the Second Amendment. *See Wrenn v. D.C.*, 864 F.3d 650, 667 (D.C. Cir. 2017) ("At the Second Amendment's core lies the right of responsible citizens to carry firearms for personal self-defense *beyond the home,* subject to longstanding restrictions." (emphasis added)); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) ("The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside. The theoretical and empirical evidence (which overall is inconclusive) is consistent with concluding that a right to carry firearms in public may promote self-defense. Illinois had to provide us with more than merely a rational basis for believing that its uniquely sweeping ban is justified by an increase in public safety. It has failed to meet this burden.").

First, the Order regulates conduct that falls within the scope of the Second Amendment—it bans the carrying of a firearm for self-defense. *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012) (adopting two-step inquiry for determining whether a regulation comports with the Second Amendment). "To determine whether a law impinges on the Second Amendment right, we look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *Id.* (citing *Heller*, 554 U.S. at 577–628).

---

authority to suspend the right to openly carry firearms. Neither Section 45-17-7, nor any other statute governing municipal civil emergencies, however, authorizes a mayor to suspend any valid state statute or constitutional right, whether during a civil emergency or otherwise.

5

According to the Supreme Court in *Heller*, "interpret[ations] of the Second Amendment in the century after its enactment," serve as "a critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605. This is true because such historical interpretations of Constitutional rights demonstrate "the scope they were understood to have when the people adopted them." *Id.* at 634-35. Open carry of a firearm was the precise method of firearm possession envisioned by the Framers. History is replete with case law—antebellum and beyond—explicitly acknowledging the right to keep and bear arms includes the right to openly carry a firearm in public. *See, e.g.*, *State v. Chandler*, 5 La. Ann. 489, 489-90 (1850) (holding citizens have a right to carry arms openly "in full open view" and stating that "[t]his is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defen[s]e of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."); *Andrews v. State*, 50 Tenn. 165, 178 (1871) (holding that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," violated the state right to keep and bear arms); *State v. Reid*, 1 Ala. 612, 616–17 (1840) (observing that a regulation that amounts to a total ban on public carrying would be "clearly unconstitutional"); *Nunn v. State*, 1 Ga. 243, 251 (1846) ("But that so much of it, as contains a prohibition against bearing arms openly, is in conflict with the Constitution, and void[.]").[3] As history makes clear, the right to openly carry

---

[3] The Georgia Supreme Court, in a case analyzing the state's concealed carry application process, has declined to follow the reasoning in *Nunn*. *Hertz v. Bennett*, 294 Ga. 62, 751 S.E.2d 90 (2013). Nonetheless, *Nunn* is instructive with respect to its historical analysis.

6

a firearm in public has been affirmed repeatedly and falls squarely within the scope of the Second Amendment.

"[T]he second step [in the two-step inquiry] is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny." *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 194. "[T]he appropriate level of scrutiny 'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" *Id.* at 195 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). A regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify. *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 195 (citing *Heller v. D.C.*, 670 F.3d 1244, 1257 (D.C. Cir. 2011)).

Here, the Order acts as a complete bar to openly carrying a firearm within the City of Jackson. The ban applies to everyone, all types of firearms, all methods of open carrying, in every part of the City. The right to openly carry is fundamental. The City's wholesale ban on this conduct severely—completely—burdens this fundamental right. In light of the fundamental nature of the right to openly carry a firearm, and the severity of the burden imposed by the Order, strict scrutiny should be applied to the instant matter, and the Order shall be rendered invalid.

Even under "intermediate scrutiny,"[4] applicable to lesser burdens on Second Amendment rights, the Order still fails. This standard "requires the government to demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective." *Id.* at 195. The Defendants cannot meet this burden. The Order purports to be enacted in an attempt to curb violence within the City during the pendency of the civil emergency proclamation issued by the Mayor and effective through April 30, 2020, because of the COVID-19 pandemic.[5] In support, the Order notes one dozen shootings have occurred within the City, with seven being fatal.[6] The makes no attempt to connect the conduct it bans—openly carrying firearms—to the COVID-19 pandemic.

The Order violates the Second Amendment to the United States Constitution and must fail.

---

[4] "This 'intermediate' scrutiny test must be more rigorous than rational basis review, which *Heller* held 'could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right' such as 'the right to keep and bear arms.'" *Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 195 (quoting *Heller*, 554 U.S. at 628 n. 27); *see also id.* ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect.").

[5] As discussed below, the Order's purported relationship to the COVID-19 pandemic is a fallacy. The City presents no compelling support, or any support whatsoever, for its proposition that COVID-19 has or will increase violent crime within the City.

[6] The listed crimes represent those committed since COVID-19 took root in Mississippi. Despite the Order, a firearms-related homicide occurred within the City on April 25, 2020, just days after the Order went into effect. *See* Jackson Police Identify Victim Killed at Pine Ridge Garden Apartments, WJTV News, https://www.wjtv.com/top-news/jackson-police-investigate-deadly-shooting-killing-21-year-old-man/.

8

## B. The Order Violates the Mississippi Constitution.

The Order's open carry ban clearly violates the Mississippi Constitution. Article 3, Section 12 of the Mississippi Constitution provides: "*The right of every citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power when thereto legally summoned, shall not be called in question, but the Legislature may regulate or forbid carrying concealed weapons.*" MISS. CONST. ART. 3, § 12 (emphasis added). "So in short, the Mississippi Constitution grants citizens the right to keep and bear arms, and it provides that that right 'shall not be called in question.'" *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 853 (Miss. 2016).

This provision distinguishes between concealed carry and other forms of carry. It explicitly authorizes the Legislature to regulate the practice of concealed carrying[7] only, and implicitly provides that any other type of carrying—*i.e.*, openly carrying for self-defense—"shall not be called into question." *See* MISS. CONST. ART. 3, § 12; *see also Ward v. Colom,* 253 So. 3d 265, 267 (Miss. 2018)*, reh'g denied,* (Oct. 4, 2018) ("One of the clearest delegations of legislative power in our Constitution is found in Article 3, Section 12. It provides: "The right of every citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power when thereto legally summoned, shall not be called in question, but the Legislature may regulate or forbid carrying concealed weapons."); *McClain v. Lafayette Cty. Bd. of Ed.*, 673

---

[7] The Legislature has enacted a robust licensing scheme to facilitate concealed carry in the State of Mississippi. *See, e.g.*, Miss. Code Ann. §§ 45-9-41 et seq., 45-9-51 et seq., 45-9-101, et seq. Further, it has explicitly defined the term "concealed." Miss. Code Ann. § 97-37-1.

F.2d 106, 107 (5th Cir. 1982) ("By 1890 the carrying of *concealed* deadly weapons had attained such gravity that statutes prohibiting such conduct received special constitutional sanction, Mississippi Constitution 1890, Section 12." (emphasis added)).  Accordingly, under Section 12, there is no role for local governing bodies to regulate the carrying of firearms, except to the very limited extent permitted by the Mississippi Legislature.  *See* Miss. Code Ann. §§ 45-9-51, -53.

Section 12 confers an *individual* right to keep and bear firearms even more explicitly than the Second Amendment to the United States Constitution.  *D.C. v. Heller*, 554 U.S. at 602 ("Another three States—Mississippi, Connecticut, and Alabama—used the even more individualistic phrasing that each citizen has the 'right to bear arms in defense of himself and the State.'"); *McDonald v. City of Chicago, Ill.,* 561 U.S. at 777 (finding that "[q]uite a few . . . state constitutional guarantees, moreover, explicitly protected the right to keep and bear arms as an individual right to self-defense" and citing Art. 3, § 12 of the Mississippi Constitution as an example).  Moreover, while the Second Amendment merely speaks to "the right of the people to keep and bear Arms," U.S. CONST. AMEND. II, the Mississippi Constitution is much more broad—it protects "the right of every citizen to keep and bear arms *in defense of his home, person, or property, or in aid of the civil power . . .* ," MISS. CONST. ART. 3, § 12.

The City lacks any authority, pursuant to Article 3, Section 12 of the Mississippi Constitution to enact a blanket ban on openly carried firearms.  If this constitutional provision is to retain any validity, the Order must fail.

10

### C. The Order Violates Mississippi Statutory Law.

Aside from Article 3, Section 12's language foreclosing a local governing authority from enacting restrictions on the carrying of firearms, the Mississippi Legislature has made clear that any such regulations are preempted, and may be enacted only by the Legislature. Mississippi Code Annotated Section 45-9-51 provides, in part: "Subject to the provisions of Section 45-9-53, *no county or municipality may adopt any ordinance that restricts the possession, carrying, transportation, sale, transfer or ownership of firearms or ammunition or their components.*" Miss. Code Ann. § 45-9-51(1) (emphasis added). Accordingly, in Section 45-9-53, the Legislature has delegated some of its constitutional authority to regulate concealed carry. While this statute provides municipalities and counties very limited authority to regulate firearm use—such as discharging firearms and carrying firearms at "(i) a public park or at a public meeting of a county, municipality or other governmental body; (ii) a political rally, parade or official political meeting; or (iii) a nonfirearm-related school, college or professional athletic event"— there is no exception to Section 45-9-51 found within Section 45-9-53 that authorizes the blanket suspension of openly carrying a firearm.

Furthermore, the Legislature bolstered the right to openly carry a firearm in Mississippi by passing House Bill 2, during the 2013 Legislative Session.[8] House Bill

---

[8] The Mississippi Supreme Court has ruled that House Bill 2 was not unconstitutionally vague. *State v. Smith*, 123 So. 3d 920 (Miss. 2013).

2, among other things, defined the term "concealed" and clarified that carrying a firearm in a manner that was not "concealed" does not require a firearms permit, pursuant to Section 45-9-101, and is not a criminal violation of Section 97-7-1(1).

Although the Order seeks to suspend the "open carry of firearms," it does not identify any specific statute or statutes that it seeks to suspend. Rather, in detailing what conduct is forbidden under the Order, it quotes language from Section 45-9-101(24), which provides:

> A license [to carry a concealed carry firearm] is not required for a loaded or unloaded pistol or revolver to be carried upon the person in a sheath, belt holster or shoulder holster or in a purse, handbag, satchel, other similar bag or briefcase or fully enclosed case if the person is not engaged in criminal activity other than a misdemeanor traffic offense, is not otherwise prohibited from possessing a pistol or revolver under state or federal law, and is not in a location prohibited under subsection (13) of this section.[9]

Accordingly, the very conduct sought to be "suspended" by the Order has been expressly authorized by the Legislature. The City has no authority to suspend a state statute. The fact that the Mayor has proclaimed the existence of a "civil emergency" related to the COVID-19 pandemic does not change this reality.[10]

## II. Mississippians' Constitutional Right to Possess Firearms are Unaffected by the COVID-19 Pandemic.

On March 14, 2020, pursuant to Mississippi Code Annotated Section 33-15-11(b)(17), Governor Tate Reeves proclaimed that a state of emergency existed in

---

[9] Miss. Code Ann. § 45-9-101(13) delineates the locations in which a license holder is prohibited from carrying a stun gun, concealed pistol or revolver.

[10] *See supra* n. 2.

Mississippi due to the spread of COVID-19.[11]  Two days later, on March 16, 2020, the Mayor proclaimed a "civil emergency" existed in the City, pursuant to Miss. Code Ann. § 45-17-1, *et seq.* because of the COVID-19 pandemic.  As explained, the Mayor issued the Order pursuant to his purported authority under Mississippi's law governing municipal civil emergencies, specifically Section 45-17-7(e), which authorizes a mayor to, "in the interest of public safety and welfare" "[i]ssue such other orders as are necessary for the protection of life and property."  This statute clearly does not serve as a valid legal basis for the Order.  Furthermore, the Mayor does not make a legitimate attempt at connecting the need for the Order with the COVID-19 pandemic, the reason for enacting the civil emergency in the first place.

More importantly, neither a public health crisis, nor any other state of emergency, serve as justification for a governmental body to strip, in wholesale fashion, citizens of fundamental rights.  Mississippians' right to keep and bear arms, an "individual right[ ] secured by the Constitution, do[es] not disappear during a public health crisis." *In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020).

While, in *Abbott,* the Fifth Circuit Court of Appeals recently explained that "when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights," it required such curtailment to "have at least some 'real or substantial relation' to the public health crisis" and could not be "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Abbott*, 954 F.3d at 784 (quoting *Jacobson v. Commonwealth of Massachusetts*,

---

[11] *See* Dkt. 1-3.

13

197 U.S. 11, 31 (1905)). Further, "[c]ourts may ask whether the state's emergency measures lack basic exceptions for 'extreme cases,' and whether the measures are pretextual—that is, arbitrary or oppressive." *Id.* at 785 (quoting *Jacobson*, 197 U.S.at 38). Not surprisingly, the Order fails at every step of this analysis.

First, Defendants cannot make a good faith argument that the wholesale ban on openly carrying firearms bears any relationship to the public health crisis presented by COVID-19. While the Order generally claims COVID-19 causes increased stress and, without supporting information, alleges the pandemic has led to citizens "amassing guns and ammunition," the Order makes no assertion, directly or implicitly, that citizens' right to open carry inhibits the City's ability to cope with the pandemic.

Second, as discussed in depth above, the Order wholly, and unjustifiably, invades rights secured by fundamental law.

Third, the Order contains no exceptions whatsoever, including for "extreme cases."[12]

Finally, given the Mayor's long-standing and well-documented[13] opposition to Mississippians' right to open carry, it is abundantly clear that the Order serves as

---

[12] Notably, the Order contains no exceptions for law enforcement officers. Read literally, it could be construed to criminalize the required carrying of firearms by local, state, and federal law enforcement officers.

[13] *See*, *e.g.*, Justin Vicory, *Band-Aids aren't the answer. So what can Jackson do to curb rising homicide rates in 2019?*, CLARION LEDGER (Jan. 21, 2019) ("Lumumba said state laws such as open carry, passed in 2013, have prevented Jackson police, in part, from stemming violent crime in the city . . . I know people in the South are very attached to their firearms but we can do some things to make it harder to get them."),

14

pretext to achieve a goal he has sought for years, to extinguish the constitutional right to open carry.

The Order exploits a global health crisis to advance a policy goal that is unauthorized by law. It cannot stand.

## CONCLUSION

Because the City's Order violates fundamental rights afforded under the United States and Mississippi Constitutions, in addition to Mississippi statutory law,

---

https://www.clarionledger.com/story/news/2019/01/21/how-can-jackson-ms-curb-homicides-2019-its-complicated-murder-killings/2548162002/;

*Id*. ("'We're not allowed to even approach people we think might be carrying a gun. That's open carry,' [Lumumba] said.");

Harold Gater and Alissa Zhu, *After fatal shootings at church, Walmart, Jackson mayor calls for ban on open carry*, CLARION LEDGER (Jan. 14, 2019) ("Lumumba also called for gun control, specifically banning open carry laws."), https://www.clarionledger.com/story/news/local/2019/01/14/mississippi-fatal-shooting-church-and-walmart/2568241002/;

Justin Vicory, *U.S. Attorney Mike Hurst blasts judges, politicians in violent crime crackdown in Jackson*, CLARION LEDGER (Dec. 23, 2019) ("We know for a fact that open carry is directly, directly related to the number of guns that wind up on the streets. That's what the data says. That's what any officer will tell you," [Lumumba] said."), https://www.clarionledger.com/story/news/local/2019/12/23/jackson-ms-violent-crime-u-s-attorney-mike-hurst-blasts-judges-politicians/2732623001/;

David Kenny, *Mayor says social issues fueling crime in Jackson*, WLBT (Jan. 10, 2020) ("[Lumumba] believes open carry laws are working against law enforcement efforts to reduce shootings and get guns off the streets."), https://www.wlbt.com/2020/01/11/mayor-says-social-issues-fueling-crime-jackson/;

Eric J. Shelton, *'Next thing you know, he left me': After an unusually deadly month, loved ones reflect on the lives of Jackson homicide victims*, MISSISSIPPI TODAY (Feb. 7, 2019) ("In response to two slayings happening on the same day, Jackson Mayor Chokwe Antar Lumumba called for an open-carry ban and embraced Gov. Phil Bryant's offer of $4 million for a real-time crime monitoring system."), https://mississippitoday.org/2019/02/07/next-thing-you-know-he-left-me-after-an-unusually-deadly-month-loved-ones-reflect-on-the-lives-of-jackson-murder-victims/.

and because the Mayor cannot impede these rights under the guise of coping with the COVID-19 pandemic, the Court should invalid this Order.

Dated: May 1, 2020.

                              Respectfully submitted,

                              LYNN FITCH
                              Attorney General of Mississippi

                              KYLE WILLIAMS, MSB #105182
                              Special Assistant Attorney General
                              KRISTI H. JOHNSON, MSB #102891
                              Solicitor General
                              WHITNEY LIPSCOMB, MSB #104326
                              Deputy Attorney General
                              P.O. Box 220
                              Jackson, Mississippi 39205-0220
                              Telephone: (601) 359-4233
                              E-mail: kyle.williams@ago.ms.gov
                                          kristi.johnson@ago.ms.gov
                                          whitney.lipscomb@ago.ms.gov

                              *Counsel for the Attorney General*

## **CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the ECF system which served a copy upon all counsel of record.

This the 1st day of May, 2020.

                                                Kristi H. Johnson
                                                Solicitor General